# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

IVAN L. ROBINSON,

    Defendant

Criminal Action No. 16-98 (CKK)

**MEMORANDUM OPINION AND ORDER**
(June 15, 2017)

    In this criminal action, Defendant Ivan L. Robinson is charged with 61 counts of knowingly and intentionally distributing a controlled substance, oxycodone, by writing prescriptions for that drug outside the usual course of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), as well as 18 U.S.C. § 2. Defendant is also charged with two counts of money laundering and aiding and abetting. Now before the Court are numerous motions *in limine* addressing a wide range of evidentiary issues.

    In Defendant's [66] Motion *in Limine* No. 1 to Limit Testimony by Dr. Mark Romanoff Regarding Patients Not Named in Indictment and Legal Standards, Defendant moves the Court under Federal Rules of Evidence 401, 402, 403, and 404(b) to preclude the government's proposed expert witness, Dr. Mark E. Romanoff, from testifying as to the files of patients who were not named in the Superseding Indictment. Defendant also asks the Court to preclude Dr. Romanoff from testifying as to whether Defendant "failed to meet the legal requirements of the Controlled Substances Act in prescribing outside the legitimate practice of medicine" because it is a "legal conclusion" that "goes beyond the bounds of appropriate expert opinion." Def.'s

Mot. at 1. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court will GRANT-IN-PART and DENY-IN-PART Defendant's first motion *in limine*, as set forth in more detail below.[2] If there are any practical issues with complying with this Memorandum Opinion and Order, the parties should bring those to the Court's attention at the June 26, 2017 Status Hearing.

## I. DISCUSSION

Defendant's first motion *in limine* raises two distinct questions: (A) whether evidence regarding patients other than those listed in the Superseding Indictment is admissible, and (B) whether Dr. Romanoff should be allowed to testify as to "legal standards." The Court will address each in turn.

### A. Patients Not Named in the Superseding Indictment

With respect to Defendant's motion to exclude evidence regarding patients other than those named in the Superseding Indictment, the government's response is two-fold. First, the government contends that with respect to the drug distribution counts in the Superseding Indictment, this evidence would be properly admissible under Rule 404(b) to show intent or absence of mistake. Second, the government contends that with respect to the money

---

[1] The Court's consideration has focused on the following documents: Defendant's Motion *in Limine* No. 1 to Limit Testimony by Dr. Mark Romanoff Regarding Patients Not Named in Indictment and Legal Standards, ECF No. 66 ("Def.'s Mot."); Government's Consolidated Reply in Opposition to Defense Motions *in Limine* Nos. 1 and 3, ECF No. 84 ("Gov.'s Opp'n"); Defendant's Reply in Support of Motions *in Limine* Nos. 1 and 3, ECF No. 101 ("Def.'s Reply").
[2] The Court notes that this motion overlaps to a degree with Defendant's pending [33] Motion to Exclude Testimony of Dr. Mark Romanoff, and that certain arguments touching on Dr. Romanoff's proposed testimony will have to wait to be resolved after the hearing on that motion. Defendant distinguishes the two motions by explaining that his Motion to Exclude raises "methodological" concerns regarding Dr. Romanoff's testimony under Rule 702, whereas his first motion *in limine* challenges that testimony under other rules of evidence. Def.'s Reply at 2.

laundering counts in the Superseding Indictment, evidence that Defendant made money from selling illegal prescriptions to patients, regardless of whether they are named in the separate drug distribution counts, is admissible evidence of an essential part of the government's case in chief, and not "other crimes" evidence under Rule 404(b). The admissibility of the evidence with respect to the different claims in this case must be analyzed separately.

**1. Drug Distribution Counts**

First, the Court finds that evidence regarding patients not specifically named in the Superseding Indictment is admissible under Rule 404(b) with respect to the drug distribution counts, but will limit that evidence under Rule 403 such that the government shall not offer evidence of Defendant's "practice as a whole," Def.'s Mot. at 2, which includes approximately 1,800 patients.[3] In this context, it is helpful to begin by explaining the legal framework for the claims in this case. Section 841(a)(1) states that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The government contends that Defendant, a nurse practitioner, violated this statute when he issued a number of prescriptions for oxycodone. It has long been settled that section 841 applies to registered health care professionals like Defendant. *See United States*

---

[3] Defendant argues in his motion that the government may not present this evidence under Rule 404(b) because it did not give formal notice of its intent to do so by a Court-ordered deadline. The government's failure to comply with this deadline is presumably a result of the fact that the government primarily contends that this evidence is *not* Rule 404(b) evidence, but instead evidence of a necessary element of its money laundering charges. To the extent the Court finds that the evidence is properly admissible under Rule 404(b), it rejects Defendant's notice argument because Defendant has been on notice of the content of Dr. Romanoff's proposed testimony since as early as May, 2016.

3

*v. Moore*, 423 U.S. 122, 124 (1975) ("registered physicians can be prosecuted under s 841 when their activities fall outside the usual course of professional practice."). With respect to such individuals, who are legally allowed to distribute controlled substances under certain circumstances, the prohibition means that "[a] prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04. Prescriptions outside these bounds—such as the 61 alleged prescriptions issued to 11 patients named in the Superseding Indictment—are illegal.

The standard for determining whether a prescription is issued within the usual course of professional practice is an objective one. *See United States v. Tobin*, 676 F.3d 1264, 1283 (11th Cir. 2012) (holding that "whether a prescription is made in the usual course of professional practice is to be determined from an objective, and not subjective, viewpoint"); *United States v. Smith*, No. CRIM 05-282 MJD/JJG, 2006 WL 3702656, at *3 (D. Minn. Dec. 14, 2006) ("Based on extensive case law, the Court concludes that the law requires an objective standard for the phrase 'usual course of professional practice.'") (citing cases). Despite the use of the word "his" in section 1306.04, the government is not required to prove that Defendant was acting outside the usual course of Defendant's *own* practice, but instead that he was acting outside the usual course of a generalized, objective professional practice when he issued the charged prescriptions. *See United States v. Smith*, 573 F.3d 639, 648 (8th Cir. 2009) (holding that "it was not improper to measure the 'usual course of professional practice' under § 841(a)(1) and § 1306.04 with reference to generally recognized and accepted medical practices and not a doctor's self-defined particular practice."); *United States v. Norris*, 780 F.2d 1207, 1209 (5th Cir. 1986)

4

(rejecting argument that "the use of the word 'his' in the regulation requires the government to prove that he prescribed the drugs for a purpose that was contrary to [defendant's] own standards of reasonable medical practice."). As such, the Court clarifies for the record that with respect to the counts brought under section 841, which relate only to 61 prescriptions issued to 11 patients, the government is not required to prove the nature of Defendant's overall practice.

With this framework established, the Court moves on to consider the extent to which evidence regarding Defendant's practice with respect to patients not listed in the Superseding Indictment could nonetheless be admissible under Rule 404(b). Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Noting that drug distribution under section 841 is a specific intent crime, the government contends that evidence of the fact that Defendant issued other illegal prescriptions is relevant to show intent, "absence of mistake or accident, and a purposeful intentional scheme to make money selling prescriptions." Gov.'s Opp'n at 8; *see also United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) ("Specific intent is an essential element of a charge under 21 U.S.C. § 841(a) of possession of narcotics with intent to distribute, and the prosecution would have been justified in offering other crimes evidence in its case-in-chief . . ."). Defendant, on the other hand, contends that evidence of uncharged prescriptions could only be intended as improper character evidence.

The Court finds that evidence of similar uncharged illegal drug prescribing activity is theoretically proper under Rule 404(b) because it tends to prove Defendant's intent and absence

5

of mistake when he issued the charged prescriptions. *See United States v. Merrill*, 513 F.3d 1293, 1299-303 (11th Cir. 2008) (holding that "[a] jury may consider prescription data sets outside those specifically charged in the indictment to determine whether a physician has exceeded the legitimate bounds of medical practice and as evidence of a plan, design, or scheme.") (internal quotations omitted); *United States v. Brown*, 553 F.3d 768, 789-90 (5th Cir. 2008) (holding that the district court did not abuse its discretion in admitting evidence of other prescriptions because "[t]he critical issue at trial was whether the appellants filled [one doctor's] prescriptions knowing they were illegitimate, and appellants' experiences in filling piles of similar false prescriptions from a different doctor would speak directly to that issue"); *United States v. Henry*, 727 F.2d 1373, 1377–78 (5th Cir.), *on reh'g*, 749 F.2d 203 (5th Cir. 1984) (holding that evidence of prescriptions other than those charged in the indictment was admissible under Fed. R. Evid. 404(b) because "[t]he extrinsic evidence provides background information concerning [defendant's] practices in dispensing Schedule II drugs to the same individual on a frequent basis in large quantities under at least questionable circumstances as to legitimate medical needs, and, thus, shows substantially identical acts."); *United States v. Harrison*, 651 F.2d 353, 355 (5th Cir. 1981) (holding that the jury, "in considering the issue of exceeding the legitimate bounds of medical practice, [was not] limited to considering only prescriptions charged . . . [p]rescriptions issued at other times were admissible as evidence of plan, design or scheme.").

That being said, the Court notes that there are limits on this evidence to the extent it is offered under Rule 404(b). In his motion, Defendant relies extensively on an Eighth Circuit case entitled *United States v. Jones*, 570 F.2d 765 (8th Cir. 1978). In that case, the court held

6

that evidence of prescriptions other than those named in the indictment was not properly admitted under Rule 404(b) because "[t]he prosecution did not introduce any evidence concerning the doctor-patient relationship existing with respect to these prescriptions, nor did it present other proof that the prescriptions had not been issued for a proper medical purpose." *Id.* at 768. The Eighth Circuit did not hold that evidence of other prescriptions could *never* be admissible Rule 404(b) evidence, but instead reasoned that "[t]he other prescriptions of Schedule II drugs by [the defendant] to his patients constituted crimes or unlawful acts similar to the crimes charged in the indictment only if [the defendant] issued those prescriptions outside the bounds of professional medical practice." *Id.* The Court agrees with this analysis, and herein holds that evidence of other prescriptions in this case is admissible under Rule 404(b) for the reasons set forth above only to the extent the government in fact establishes that those prescriptions were issued illegally—the government may not simply present evidence that other prescriptions were made without any evidence that they were unlawful. The Court does not yet know if the government can or will establish that the other prescriptions were issued outside the bounds of professional practice, but notes that its decision to allow this evidence under Rule 404(b) is contingent on the government doing so.

Despite the fact that this evidence has a proper Rule 404(b) purpose, it also must be balanced against Rule 403 considerations. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, exercising its discretion, the Court finds that the probative value of this Rule 404(b) evidence is substantially

7

outweighed by these dangers to the extent it implicates Defendant's *entire* practice (including some 1,800 patients). To allow the government to present evidence implicating hundreds of other patients and prescriptions would improperly overshadow the actual conduct charged in this case. *See Jones*, 570 F.2d at 769 (holding that evidence of other prescriptions was subject to exclusion when used as Rule 404(b) evidence where it was so extensive that "the Government spent more time in its case-in-chief dealing with alleged wrongful conduct not covered by the indictment than it spent dealing with the incidents for which [the defendant] was charged."). Presenting this evidence would unfairly force the Defendant to defend against extremely voluminous allegations not expressly at issue in the drug distribution claims. It would also risk the jury misusing the evidence to improperly speculate that the mere volume of Defendant's practice was improper, and potentially significantly extend the length of the trial beyond need or reason.

That being said, the Court will not preclude this evidence altogether under Rule 403. To the extent it is limited to a reasonable number of other patients, the probative value of this Rule 404(b) evidence is not substantially outweighed by these dangers. The Court will not preliminarily set an exact number of uncharged patients or prescriptions that the government may present evidence on before trial, but does hold that evidence regarding the 24 patients Dr. Romanoff has testified about would not be excessive. *See United States v. Clarke*, 767 F. Supp. 2d 12, 28 (D.D.C. 2011), *aff'd sub nom. United States v. Straker*, 800 F.3d 570 (D.C. Cir. 2015) (holding that other crimes evidence was not subject to exclusion under Rule 403 in part because "the Court . . . minimized the potential for prejudice from the other crimes evidence by

8

restricting the government's evidence" and "limiting the government's trial time concerning other crimes evidence," which "kept the focus of the trial on the charged" crime).

### 2. Money Laundering Counts

With respect to the government's money laundering charges, the Court agrees with the government that evidence regarding patients not explicitly included in the Superseding Indictment is not Rule 404(b) evidence. In counts 62 and 63 of the Superseding Indictment, the government charges Defendant with knowingly engaging in two monetary transactions with property derived from selling or dealing in controlled substances. Both transactions related to money being used or withdrawn from a particular Bank of America bank account. It is the government's burden to show that the money used in those transactions derived from an unlawful activity. 18 U.S.C. § 1957(a). In this case, the Court understands that the government intends to offer evidence that shows that Defendant derived money from illegally selling prescriptions, placed that money into the Bank of America account, and then withdrew money from that account for the purposes of the charged transactions. Evidence that Defendant illegally sold prescriptions to patients then, regardless of whether those patients are named in the drug distribution charges, is not Rule 404(b) or "other crimes" evidence. With respect to the money laundering counts, it is relevant evidence of an element of the charged offense.

However, the Court will exercise its discretion to similarly limit this evidence in the context of the money laundering charges under Rule 403 such that the government shall not offer evidence that Defendant illegally sold prescriptions as his *entire* practice. The Court finds that the probative value of evidence regarding Defendant's practice as a whole (some 1,800 patients) is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the

9

jury, undue delay, wasting time, or needlessly presenting cumulative evidence. The government is required to prove that Defendant "engage[d] in a monetary transaction in criminally derived property of a value greater than $10,000." 18 U.S.C. § 1957. Here, it seeks to do so by offering evidence that in two transactions—one of $40,769.87 and another of $108,000—Defendant used money drawn from a Bank of America account into which he had placed funds from the illegal sale of prescriptions. Accordingly, the government clearly needs to present evidence of some number of illegal prescriptions, and the Court will not limit that evidence to prescriptions for patients named in the Superseding Indictment's drug distribution charges. But evidence that Defendant was engaging in the sale of illegal prescriptions with regard to Defendant's *entire* practice, or *hundreds* of patients, does not appear to be necessary to prove this claim. *See United States v. Moore*, 27 F.3d 969, 976 (4th Cir. 1994) (holding that to satisfy its burden under section 1957, the government is not required to prove "that the funds used in the transaction were exclusively derived from the specified unlawful activity."). In addition to not being strictly necessary, the Court is concerned that there is a danger that the jury would be confused or misuse this evidence as improperly excessive, overshadowing "other crimes" evidence that the Court has already found inappropriate above. The Court also concludes that this evidence would be cumulative and lead to unnecessary extensions of the trial. Again, the Court will not set a strict limit on the number of patients or prescriptions the government presents evidence of before trial, but merely hold that evidence of Defendant's overall practice, despite not being Rule 404(b) evidence with respect to the money laundering charges, will be excluded under Rule 403.

## B. Expert Testimony as to "Legal Standards"

Finally, Defendant also moves in his first motion *in limine* to preclude Dr. Romanoff from testifying as to "whether Mr. Robinson's conduct met the legal standards of the Controlled Substances Act." Def.'s Mot. at 9. Among other things, Defendant takes issue with Dr. Romanoff testifying that Defendant's prescriptions "fell outside the course of a legitimate professional practice" and were not "used for a legitimate medical purpose." *Id.*

Defendant's motion is well-taken only in part. "An expert witness may not deliver legal conclusions on domestic law, for legal principles are outside the witness' area of expertise under Federal Rule of Evidence 702." *Weston v. Washington Metro. Area Transit Auth.*, 78 F.3d 682, 684 n.4 (D.C. Cir.), *opinion amended on reh'g*, 86 F.3d 216 (D.C. Cir. 1996). As such, the Court will not allow Dr. Romanoff to testify that Defendant's conduct was "criminal" or "illegal," that he failed to meet the requirements of or violated the Controlled Substances Act or section 1306.04, or to provide other explicitly legal conclusions. Nor shall Dr. Romanoff purport to explain to the jury the legal meaning of the Controlled Substances Act or section 1306.04. However, the Court finds that it is appropriate for Dr. Romanoff to testify as to the standard of care a health care professional such as Defendant must adhere to in order to properly prescribe oxycodone, and whether prescriptions issued by Defendant were made "for a legitimate medical purpose" and "in the usual course of his professional practice." Although tracking the regulatory language, such testimony is permissible because it does not use terms that have "separate, distinct and specialized meaning in the law different from that present in the vernacular." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) (quoting *Torres v. Cty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)). Several other

11

courts have come to similar conclusions. *See United States v. Boccone*, 556 F. App'x 215, 225–27 (4th Cir. 2014) (holding that "an expert may testify that treatment was 'outside the bounds of . . . professional medical practice,' or that 'treatment of certain patients was either illegitimate or inappropriate,'" but statement that "it is illegal" may have been inappropriate) (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)) (citing cases); *United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013) (finding that expert testimony using phrase "other than legitimate medical purposes" was appropriate); *United States v. Smith*, 573 F.3d 639, 653–55 (8th Cir. 2009) (holding that it is appropriate for expert witness to testify as to the "standard of care to which a doctor must adhere in order to prescribe properly a controlled substance" but not "about the legal meaning of § 1306.04"). The government shall instruct Dr. Romanoff as to the Court's holding so as to ensure that no inadmissible testimony is inadvertently elicited.

## II. CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's [66] Motion *in Limine* No. 1. Accordingly, it is, this 15th day of June, 2017, hereby

**ORDERED** that Defendant's [66] Motion *in Limine* No. 1 is DENIED in that the Court will not exclude *all* evidence of illegal prescriptions relating to patients not named in the Superseding Indictment. The Court finds that this evidence is proper Rule 404(b) evidence with respect to the drug distribution counts in the Superseding Indictment, and evidence of the substantive offense with respect to the money laundering counts. The parties shall propose to the Court a jury instruction with respect to the use of this evidence under Rule 404(b). It is further

**ORDERED** that Defendant's [66] Motion *in Limine* No. 1 is GRANTED in that the Court will exclude evidence of illegal prescriptions with regard to Defendant's entire, overall practice under Rule 403. It is further

**ORDERED** that Defendant's [66] Motion *in Limine* No. 1 is DENIED in that the Court finds that it is appropriate for Dr. Romanoff to testify as to the standard of care a health care professional must adhere to in order to properly prescribe oxycodone, and whether Defendant's conduct demonstrated that a prescription was made "for a legitimate medical purpose" and "in the usual course of his professional practice." It is further

**ORDERED** that Defendant's [66] Motion *in Limine* No. 1 is GRANTED in that the Court will not allow Dr. Romanoff to testify that Defendant's conduct was "criminal" or "illegal," that he failed to meet the requirements of or violated the Controlled Substances Act or section 1306.04, or to provide other explicitly legal conclusions, nor shall Dr. Romanoff purport to explain to the jury the legal meaning of the Controlled Substance Act or section 1306.04.

**SO ORDERED.**

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge