UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Crim. No. 1:16-cr-098 (CKK) |
| | : | |
| v. | : | |
| | : | |
| IVAN LAMONT ROBINSON, | : | |
| | : | |
| **Defendant.** | | |

## GOVERNMENT'S RESPONSE
## TO DEFENDANT'S LETTER DATED FEBRUARY 13, 2018

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this response to the defendant's letter of February 13, 2018. ECF Doc. 304-1.

On February 13, 2018, the defendant sent the government a letter seeking additional discovery on two topics. Id. First, the defendant sought correspondence and other information regarding the prosecution's contact with Stephen Hessler, Esquire. Id. Second, the defendant sought information regarding contact the defendant had with DEA Special Agent Lisa Pryor. Id.

I.   The Government's Contact with Stephen Hessler

In December 2015, the defendant initiated a civil lawsuit wherein he is the plaintiff suing his former landlord, Franklin & Rocky Properties. See D.C. Superior Court case 2015-CA-9320. Dr. Yolanda Ragland is a Third-Party Defendant in that lawsuit. As part of the proceedings in that matter, on February 24, 2017, Dr. Ragland was deposed by Mr. Hessler, who represents the landlord. On July 29, 2017, at the request of the government, Mr. Hessler provided a copy of Dr. Ragland's deposition transcript to the prosecution. This was the only document provided by Mr.

1

Hessler. The transcript was provided to the defense during Dr. Ragland's cross-examination on August 2, 2017.[1]

The defendant, in his February 13, 2018 letter, requested correspondence between the government and Mr. Hessler, including any documents provided by Mr. Hessler. Id. At the February 15, 2018 hearing, defense counsel further detailed the request, stating:

> It's come to our attention that they [the government] had actually -- we did not have; but that they had the fee agreement between Dr. Robinson and Ms. Baker -- I'm sorry -- and Dr. Ragland and the attorney, which makes very clear that he is not paying the fees for Dr. Ragland . . . [Y]ou clearly had a bunch of material regarding Dr. Ragland that you didn't turn over . . . We need to know the full extent of what they got in that case regarding Dr. Ragland . . . Our understanding is that he [Mr. Hessler] turned over -- his firm turned over the entire file from that case to the Government.

February 15, 2018 Hearing Tr. page 9, lines 20-24; page 10, lines 5-6, 10-11; page 12, lines 12-14. The prosecution does not have any documentation from the civil suit other than Dr. Ragland's deposition. The prosecution does not have the fee agreement between any of the parties in the civil suit. The prosecution did not request nor receive any files regarding the civil suit, other than Dr. Ragland's deposition transcript.

The defendant's February 13, 2018 letter also requested any documentation "related to testimony Mr. Hessler may have provided to the District of Columbia Commission on Human Rights." ECF Doc. 304-1, page 1. The prosecution does not have any such material.

II.     The Defendant's Contacts with DEA Special Agent Lisa Pryor

During the course of this case, the defendant made requests of the government for reports of conversations that he had with Agent Pryor. The government endeavored to locate such reports

---

[1] Dr. Ragland was the defendant's witness, thus her deposition was not Jencks material that the government was required to turn over. See Fed.R.Crim.P. 26.2 (requiring the production of statements by the party who calls the witness).

2

and was advised by the DEA that none existed. However, on February 16, 2018, the prosecution learned from the DEA, for the first time, of the existence of two reports written by Agent Pryor regarding her conversations with the defendant in January 2011 that had not previously provided to the defense. See Attachment A (January 11, 2011) and Attachment B (January 25, 2011).[2] Agent Pryor had previously informed the prosecution on multiple occasions that the reports did not exist.

    A.  The Government's Due Diligence Search for the Reports

On July 4, 2017, the defendant requested information regarding contact the defendant had with Agent Pryor wherein the defendant reported individuals, specifically Jesse Goble, for drug-seeking behavior. See Attachment C (July 4, 2017 e-mail from defense counsel). The prosecution, in turn, requested that the DEA agents search the DEA files for the requested documents. The agents stated that they searched the DEA case file and told the prosecution there were no reports written by Agent Pryor regarding any contact with the defendant in the DEA files for this case.

The defendant reiterated his request on July 5, 2017, telling the Court that:

> We want Agent Pryor, who is not on the Government's witness list, as one of our witnesses so that she can testify about these contacts. One of the contacts actually was, my impression is, was specifically about Jesse Goble, that's G-O-B-L-E, who is one of the indicted patients, meaning that he has a number of prescriptions in the indictment, and he'll be a Government witness is my understanding. So, in other words, Doctor Robinson reported him to the DEA for basically drug-seeking behavior

July 5, 2017 Hearing Tr., page 54, line 2-12. The prosecution advised the Court that DEA agents had, indeed, searched for the reports, but had not located any:

> It's my understanding -- and this is from conversations with the agents here in D.C. -- that no reports, no DEA 6s were generated based on any calls that the defendant may have made to Agent Pryor

---

[2] Some of the attachments to this pleading are partially redacted in the public ECF filing; unredacted copies will be provided to the Court and defense counsel.

> . . . We've had one of the agents here in D.C. check the system, and they could not find any reports.

Id., page 55, lines 3-6, 15-17. The prosecutor further stated that Agent Pryor herself would be contacted in an effort to locate any such reports. Id., page 55, lines 21-25, page 56, lines 1-5.[3]

On July 5, 2017, after the hearing, the prosecution sent Agent Pryor an e-mail in an effort to locate any reports that she may have written regarding complaints the defendant may have lodged with the DEA regarding his patients. See Attachment E (July 5, 2017 e-mail to Agent Pryor). Later that evening, Agent Pryor and the prosecutor spoke via telephone.[4] Agent Pryor stated that she had spoken to the defendant at some point prior to his arrest in this matter. Agent Pryor stated that she did not take any notes, nor did she generate any reports regarding the defendant's call. When asked why she did not document the conversation, Agent Pryor stated that she did not believe the defendant was making a genuine complaint but, rather, was attempting to determine whether the DEA was investigating him. See ECF Doc. 301-1; see also February 15, 2018 Hearing Tr. page 10, lines 19-24 ("I spoke with her [Agent Pryor] at that time. And at that time she said she had a conversation with the defendant, but she had not taken any notes; she had not written a report").

On October 3, 2017, the defendant sent the government a letter seeking "all reports, notes, or other documentation from Agent Lisa Pryor" as well as "all reports, notes, or other documentation regarding [the defendant's] reporting of Jesse Goble and other patients for drug

---

[3] With regard to the defendant calling Agent Pryor as a witness, the prosecution stated, at the July 5, 2017 hearing, "We have no objection to them calling the agent to testify . . . if they would like to subpoena her through DEA counsel and make her travel arrangements, we, of course, have no objection to that." Id., page 56, lines 11-12, 19-21. Additionally, defense counsel had Agent Pryor's e-mail address (having had previously sent Agent Pryor an e-mail message) and, thus, had an avenue to contact Agent Pryor directly. See Attachment D (February 20, 2014 e-mail from defense counsel); see also Case 1:13-mj-00491-GHH, ECF Doc. 6-1.

[4] Agent Pryor currently resides in Thailand, and did so during the trial.

seeking behavior." See ECF Doc. 290-3.  Based on Agent Pryor's representations to the prosecution, the government responded for a second time, on January 26, 2018, stating, as it did on July 5, 2017, that, Agent Pryor had stated that she "did not take any notes, nor generate any reports regarding the defendant's call.  A review of the DEA files confirms that no reports exist regarding the defendant's conversation with SA Pryor." See ECF Doc. 301-1.

On February 13, 2018, the defendant sent the government a letter requesting that the government undertake additional efforts to locate documentation of the defendant's calls, or complaints, to the DEA.  See ECF. Doc. 304-1.  At a hearing on February 15, 2018, defense counsel requested information regarding the defendant's "relationship" with Agent Pryor:

> we have sort of learned more recently, that there was a kind of a longer course of -- a longer relationship between Dr. Robinson and Special Agent Lisa Pryor, DEA agent, regarding Dr. Robinson reporting various patients who were trying to fraudulently procure oxycodone from him . . . he went out and was going to the police and saying: Hey, these people are trying to fraudulently get drugs from me.

February 15, 2018 Hearing Tr. page 8, lines 13-18, 20-22; page 9.  The Court requested that the government contact Agent Pryor again, and the prosecution agreed to make further inquiries of Agent Pryor.  Id., at page 11, lines 5-10.

On February 15, 2018, after the hearing, the prosecution again contacted Agent Pryor via telephone.  Agent Pryor again stated that she did not take any notes, nor did she generate any reports of her conversations with the defendant.  However, Agent Pryor told the prosecution, for the first time, that she had two - not one - conversations with the defendant, and that one of the conversations had been in-person.  Agent Pryor stated that the in-person conversation occurred when the defendant voluntarily visited the DEA office.  Agent Pryor also stated that the defendant called her on later occasions, but that she and other agents did not accept the subsequent calls.

5

Agent Pryor again stated that she did not believe the complaints were genuine, since the defendant was not turning people away from his practice and he was still issuing prescriptions, and that it appeared to her that the defendant was "feeling out" the agents. When asked again about writing any reports or taking any notes, Agent Pryor indicted that, as a supervisor, she would not have written a report, but that another agent, Mark Embrey, was present and that he may have written a report. This was the first time that Agent Embrey had been mentioned in connection to the defendant. Agent Pryor stated that she never called the defendant, that the defendant's staff never called her, and that she did not have any sort of relationship with the defendant (*e.g.,* the defendant was not supplying information to the DEA). Finally, Agent Pryor stated that the contacts with the defendant occurred <u>before</u> any investigation was opened regarding the defendant.

  The following day, on February 16, 2018, the prosecution was able to locate Agent Embrey in Florida, where he is retired but still working as a contractor for the DEA. Agent Embrey recalled the conversation with the defendant. Agent Embrey recalled that the defendant was "pretty brazen" and lodged complaints against the St. Mary's Police Department. Agent Embrey felt that the defendant was "fishing" for information. Agent Embrey stated that he did not recall taking any notes or writing a report of the conversation. Agent Embrey believed that the conversation took place between 2010-2013 and that if there was a report it would be in a DEA file. Agent Embrey advised that he no longer had access to case files, but that he would attempt to locate a report, if there was one. Later that day, Agent Embrey called the prosecutor and advised that he had located the reports in DEA case file GFGD-11-4016; Agent Embrey explained that the "GF" preceding the case number is shorthand for "general file." Based on this conversation with Agent Embrey, the file number was relayed to DEA agents in the DEA's Washington D.C. office and the D.C. agents were able to retrieve the two reports. The reports were under a general file number

and not under the defendant's name or case number.  The reports were under the case number and name for a different investigation of a separate target.

On March 1, 2018, the prosecution contacted Agent Pryor via telephone to inform her that the reports had been located.  Agent Pryor stated that she did not recall writing the two reports.

B. The Substance of the Reports

The documents are two DEA-6 reports that reflect conversations that the defendant had in January of 2011 with Agent Pryor and Agent Embrey.  The first report (Attachment A) relates to a January 11, 2011 phone call that Agent Pryor received from the defendant.  The defendant advised that he had a clinic at 700 Columbia Road, NW, Washington, D.C., and that he had seen a "spike in patients from Southern Maryland."  See Attachment A, page 1.  The defendant believed that two patients, Claude Carpenter and Kevin Bryant, were using the defendant's name on fraudulent prescriptions.  Id.  The defendant also advised that he had reported this to the St. Mary's County Sheriff's Office.  Id.  The defendant also stated that a former patient was "sending in other people to obtain pharmaceuticals" but the defendant did not provide any of those patients' names to Agent Pryor.

The second report (Attachment B) refers to a January 25, 2011 meeting with the defendant, Agent Pryor, and Agent Embrey.  The defendant reported that Mr. Carpenter "was friends with the police officer who was investigating [him]."  See Attachment B, page 1.  The defendant named three law enforcement officers, Detective Lagado, Detective Pasate, and Officer Alioto, in St. Mary's County who he believed were assigned to the case.  Id.  The defendant also stated that he had lost approximately 80 patients who he believed were "pill seekers."  Id.  The defendant did not name any of those patients.  The defendant stated that, in addition to Mr. Carpenter, he also suspected patients Leslie Brown and Daniel Evans of engaging in prescription fraud.  Id., page 2.

7

The defendant showed the agents his prescription pad, noting the color and embossed seal.  Id.  The defendant also mentioned a phone call he had received from an unknown woman stating that her daughter was receiving pills from a patient named Devon Johnson.  Id.

These reports do not contain the information that the defendant sought.  The defendant requested information regarding complaints the defendant lodged against patients, specifically Mr. Goble, for drug-seeking behavior.  See Attachment C.  As an initial matter, neither of the reports mentioned Mr. Goble at all.[5]  The defendant's complaints in 2011 included individuals using written prescriptions fraudulently, "pill seekers" *leaving* his practice, and that the police in St. Mary's County were not taking his complaints seriously.

### C. The Absence of These Two Reports Did Not Affect the Trial

The absence of these documents did not affect the defendant receiving a fair trial.  In his initial discovery letter, the defendant requested:

> Any information, including any reports, records, or other documents regarding complaints made by Mr. Robinson, or any employee, intern, or other person associated with Mr. Robinson's medical practices, to any law enforcement agency regarding attempts by patients, or prospective patients, to obtain controlled substances for other than a legitimate medical purpose.  Any information, including any reports, records, or other documents, regarding patients or potential patients to whom Mr. Robinson refused to provide a prescription for a controlled substance because such patient or potential patient appeared to be seeking the controlled substance for other than a legitimate medical purpose.

See Attachment F (July 27, 2016 discovery demand letter).  On October 3, 2017, the defendant sent the government a letter seeking "all reports, notes, or other documentation from Agent Lisa Pryor" as well as "all reports, notes, or other documentation regarding [the defendant's] reporting

---

[5] The conversations between Agent Pryor and the defendant occurred in January 2011.  Mr. Goble received prescriptions from the defendant in February and March 2013.  See ECF Doc. 63 (Superseding Indictment); see also July 26, 2017 Trial Tr. pages 3187- 3188.

8

of Jesse Goble and other patients for drug seeking behavior." See ECF Doc. 290-3. Similarly, on July 4, 2017, the defendant requested information regarding "the contact [the defendant] and the DEA had before the execution of the search warrant, wherein [the defendant] had reported various individuals for drug-seeking behavior. We believe, for example, that there may have been communications between [the defendant] (and/or his staff) and the DEA specifically about government witness Jessie [*sic*] Goble." See Attachment C.

The DEA-6 reports from January 2011 do not contain this information. Thus, the reports do not contain the information the defendant was seeking – evidence that the defendant reported Mr. Goble and others to the DEA as "drug seekers." As noted, the reports do not mention Mr. Goble, and neither of the reports name any individual whom the defendant suspected of "drug-seeking." The reports were from conversations that took place two years before the investigation of the defendant was even initiated.[6] The reports were for a location (clinic on Columbia Road, NW, Washington, DC) that was not the location of the charged conduct at trial (clinics on Martin Luther King, Jr. Avenue, SE, Washington. DC).

Further, the defendant had in his possession other documentation that revealed some of the information contained in the January 2011 reports. The defendant, in both conversations, named Mr. Carpenter as a person he suspected of committing prescription fraud. See Attachments A and B. The defendant also named Detective Lagado, Detective Pasate, and Officer Alioto in the January 25, 2011 conversation as the law enforcement officers who were investigating Mr. Carpenter. See Attachment B. On September 30, 2016, the government turned over 210 pages of reports from the St. Mary's County Sheriff's Office regarding Mr. Carpenter. See ECF Doc. 301-1. Detective Lagado and Officer Alioto authored, or were named in, reports contained in the

---

[6] The reports were under case number GFGD-11-4016, with the "11" indicating the year 2011; the defendant's case number is GD-13-0146, indicating that the case file was opened in 2013.

St. Mary's County Sheriff Office paperwork.

Based on a review of the substance of the two DEA reports, a review of the voluminous discovery previously provided to the defendant, and the two-year time lapse between the reports and the case against the defendant being initiated, it is clear that the absence of these two documents did not affect the defendant receiving a fair trial.

III.     Conclusion

Because the material the defendant seeks in his February 13, 2018 letter is (1) not in the government's possession (*i.e.,* the Hessler documents), and (2) not relevant to the fairness of the defendant's trial (*i.e.,* the DEA reports from January 2011), the Court should maintain the briefing schedule on the Defendant's Motion for a New Trial, and proceed to sentencing without further delay.

          Respectfully submitted,

          JESSIE K. LIU
          United States Attorney
          DC Bar #472845

By:          */s/*
          _____

          John P. Dominguez
          Assistant United States Attorney
          D.C. Bar No. 959809
          555 4th Street, N.W.
          Washington, D.C. 20001
          202-252-7684
          *john.dominguez@usdoj.gov*
          Dineen A. Baker
          Assistant United States Attorney
          D.C. Bar 487820
          555 Fourth Street, N.W.
          Washington, D.C. 20001
          202-252-6954
          *dineen.baker@usdoj.gov*

CERTIFICATE OF SERVICE

On this 1st day of March, 2018, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

/s/
_____

Dineen A. Baker
Assistant United States Attorney