**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>IVAN L. ROBINSON,<br><br>Defendant | Criminal Action No. 16-98 (CKK) |

**ORDER**
(May 3, 2018)

On August 10, 2017, Defendant Ivan L. Robinson was convicted of over forty counts of knowingly and intentionally distributing a controlled substance, oxycodone, by writing prescriptions for that drug outside the usual course of professional practice and not for a legitimate medical purpose.   He was also convicted of two counts of money laundering. Immediately after the verdict, on the Government's motion, Defendant was committed to the custody of the United States Marshal pending sentencing.

Now before the Court is Defendant's [311] Motion for Institution of Conditions of Release Pending Sentencing.   Defendant moves to be released pending sentencing pursuant to 18 U.S.C. § 3143(a)(2)(A)(i).   Section 3143(a)(2)(A)(i) states in relevant part that "[t]he judicial officer shall order that a person who has been found guilty of an offense . . . and is awaiting imposition or execution of sentence be detained unless . . . the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted."   On the current record, the Court does not find that there is a substantial likelihood that a motion for acquittal or new trial will be granted in this matter.   Defendant's Motion is therefore **DENIED**.

By way of background, Defendant has already filed a [284] Motion for New Trial, but the briefing on that Motion was interrupted and is not yet complete.   In his current Motion for

Institution of Conditions of Release Pending Sentencing, Defendant merely notes that he "incorporates by reference" the arguments in that Motion.   The Court will not engage in a lengthy discussion of all of the arguments in Defendant's previously-filed Motion for New Trial at this time.   After that motion was filed, Defendant indicated to the Court that he was no longer satisfied with his counsel (the counsel that prepared the Motion for New Trial) and requested that the Court appoint new counsel to represent him.   After an appropriate inquiry, the Court did so. Defendant's new counsel—with Defendant's consent—has requested time to review the considerable record in this case before briefing on Defendant's Motion for New Trial resumes. The record with respect to the arguments in that Motion is accordingly not developed.

Beyond stating that they are "incorporated by reference," Defendant's current Motion for Institution of Conditions of Release Pending Sentencing provides no additional discussion of those arguments.   On the current record, without the issues having been fully briefed, the Court cannot say that Defendant is likely to succeed on any of the arguments in that Motion.   The Court has reviewed these arguments—including arguments regarding the Government's expert witness testimony, alleged evidentiary errors, a statement Defendant gave to the DEA, the definition of criminal liability under 18 U.S.C. § 841 and alleged prosecutorial misconduct—and finds that they mostly rehash points that were already considered extensively and resolved by the Court in written Memorandum Opinion and Orders issued during or before trial.[1]   The Court

---

[1] *See, e.g.*, May 15, 2017 Mem. Op. and Order, ECF Nos. 80, 81 (denying Defendant's motion to dismiss Indictment)); June 15, 2017 Mem. Op. and Order, ECF No. 119 (regarding testimony of the Government's expert witness, Dr. Mark E. Romanoff, and evidence relating to patients not named in the Indictment); June 23, 2017 Mem. Op and Order, ECF Nos. 125, 126 (denying Defendant's motion to suppress statement to the DEA); June 30, 2017 Mem. Op. and Order, ECF No. 137 (regarding testimony about the racial composition of Defendant's clientele); July 13, 2017 Order, ECF No. 178 (regarding testimony of pharmacists); July 17, 2017 Order, ECF No.

incorporates the analysis of these issues in those Memorandum Opinions and Orders into this Order as though stated in full.   At this point, without further briefing or development, the Court does not find that Defendant is likely to prevail on any of the arguments that are presented in his current Motion for New Trial.

In his Motion for Institution of Conditions of Release Pending Sentencing, Defendant only substantively discusses one narrow (alleged) *Brady* issue.   Defendant represents that he intends to develop this issue further in future briefing on Defendant's Motion for New Trial. Defendant states that the Government's March 1, 2018 response to a discovery letter from the Defendant indicates that the Government possesses two written reports regarding Drug Enforcement Administration ("DEA") Special Agent Lisa Pryor's conversations with the Defendant in 2011 that had not previously been provided to the Defendant.   Defendant contends that the failure to provide this material earlier violates *Brady*.

Although the Court makes no final ruling on this issue at this time, on the current record, the Court concludes that Defendant is not substantially likely to prevail on a motion for new trial based on this alleged *Brady* violation.   "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."   *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).   "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was

---

191 (denying motion to reconsider Order regarding testimony of pharmacists); July 27, 2017 Order, ECF No. 204 (regarding testimony about money orders); August 1, 2017 Order, ECF No. 214 (regarding jury instructions on the applicable standards and defenses).

so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281.

The Government argues that the newly discovered reports do not contain information that Defendant ever requested from the Government.   According to the Government, Defendant requested information regarding complaints he had lodged against patients, specifically Jessie Goble, for drug-seeking behavior.   The recently discovered reports do not mention Mr. Goble, or any of the witnesses called at trial.   The Government contends the reports are not material because they were made as part of a different case, two years prior to the DEA's investigation of Defendant's practice, and they pertain to locations that were not at issue in Defendant's trial.

Despite these facts, Defendant argues that he could have made use of the reports in his defense at trial.   Defendant argues that the reports (and Agent Pryor's failure to produce them when initially asked) could have been used at trial during Defendant's cross-examination of Agent Pryor and other government witnesses.   Defendant argues that he could have used the reports to impeach the credibility of Agent Pryor and the investigation of Defendant generally, to demonstrate his concern (as of 2011) about the misuse of prescriptions, and also, more specifically, to impeach the testimony of Government witnesses that they believed Defendant's reporting of prescription fraud to the DEA was not to be taken seriously.[2]   The very creation of the now-discovered reports, according to Defendant, demonstrates that the DEA in fact took the information provided by Defendant seriously and found it credible enough to record.   Defendant

---

[2]  The Court notes that in a pre-trial Memorandum Opinion and Order, it held that the government could *not* elicit testimony from DEA agents about their speculation as to Defendant's motivation for reporting alleged unlawful activity to the DEA.   *See* June 26, 2017 Mem. Op. and Order, ECF No. 131.

represents that he could have even introduced expert testimony that "the presence of information

in a written report drafted by a significant police witness investigating an alleged crime enhances

the credibility of the information."   Def.'s Reply to Opp'n to Mot. for Institution of Conditions

of Release Pending Sentencing, ECF No. 315, at 4.

　　　　For the purposes of this discussion, the Court will assume that the reports could have

been used at trial in exactly the way Defendant describes.   Even making that assumption, the

Court finds that Defendant is not likely to prove that the failure to produce the reports constituted

a *Brady* violation.   There does not appear to be any reasonable probability that the use of these

reports would have affected the outcome of the trial.   The issues raised by the reports were only

relevant to one *very small* aspect of a long, involved trial.   The Government presented to the

jury considerable evidence against Defendant of *much* greater importance, including the live

testimony of Defendant's actual patients, video footage of his interactions with patients, and

expert testimony about the appropriate uses of oxycodone in the medical profession.   This

evidence did not rely in any substantial way on the credibility of the Government's witnesses

that Defendant contends he could have impeached with the newly-discovered reports.

Moreover, defense counsel at trial did a thorough job of impeaching the Government's witnesses

with other materials.   Having presided over the entire trial, the Court finds (at least

preliminarily) that these reports would not have had any considerable impact on Defendant's

impeachment efforts.   Considering all of the evidence presented at trial as a whole, the Court

cannot say, on the current record, that the failure to provide the reports regarding Agent Pryor's

conversations with the Defendant in 2011—even if those reports may have had some marginal

value to Dr. Robinson's defense—violated *Brady*.   Again, this decision is based solely on the

current, undeveloped record.   Defendant represents that he intends to investigate and develop
this issue further.   After it has been fully developed and briefed, the Court will consider this
issue again and make a final ruling.

In sum, the Court does not find that Defendant is substantially likely to succeed on his
Motion for New Trial, even considering the recent developments that Defendant contends reveal
*Brady* violations.   The Court notes that Defendant makes several other arguments in his Motion
that appear to be intended to demonstrate that he is not a threat to the community, and that he is
unlikely to flee if released.   Defendant argues that he was in compliance with the conditions of
his release throughout the pretrial and trial proceedings, during which he was released on
personal recognizance.   He also argues that he is a lifelong resident of the Washington, D.C.
area, and has never before been arrested or convicted of a criminal offense.   He holds a
bachelor's degree, a master's degree and a doctorate.   Several individuals are apparently willing
to testify that Defendant is a devoted son and parent and is unlikely to flee the jurisdiction.
Even if it were to credit all of these assertions, given the type of crime that Defendant has been
convicted of, the Court's conclusion that Defendant does not have a likelihood of succeeding in
his Motion for New Trial precludes the Court from releasing him.   *See* 18 U.S.C. §
3143(a)(2)(A)(i) ("[t]he judicial officer *shall* order that a person who has been found guilty of an
offense . . . and is awaiting imposition or execution of sentence be detained unless . . . the
judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will
be granted.") (emphasis added).   Only if the Court were to determine that Defendant was likely
to succeed on his motion would these factors become relevant.

For the foregoing reasons, Defendant's Motion for Institution of Conditions of Release Pending Sentencing is **DENIED**.

**SO ORDERED.**

_____/s_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge