UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                                          Cr. 16-098 (CKK)

IVAN ROBINSON

**REPLY TO THE OPPOSITION TO MOTION FOR NEW TRIAL AND SUPPLEMENT TO DEFENDANT'S MOTION FOR NEW TRIAL**

Defendant, by and through undersigned counsel, does hereby submit this Reply to the Government's Opposition to Motion for New Trial and additionally files a Supplement to his previously filed Motion for New Trial.

**I. Incorporation of defendant's Motion for Reconsideration of Motion to Institute Conditions of Release Pending Sentencing and Exhibits into this pleading. See PACER Document #326, filed December 30, 2018.**

Many of the issues raised in PACER Document # 326 and this pleading are overlapping thereby requiring incorporation.

**II. Chronology of relevant filings**

a. Defendant's Motion for New Trial was filed by former counsel on October 20, 2017. This pleading was filed without the benefit of the knowledge of

1

the post-trial disclosures of 2018.

b. Government's Opposition to Motion for New Trial filed on December 8, 2017.

c. Post-trial disclosures related to Agent Pryor submitted for the first time in 2018.

**III. THE Government's Opposition To Defendant's Motion for New Trial, When Viewed Within the Knowledge and Context Of The Post-Trial Disclures of Agent Pryor, Clearly Establishes Defendant's Entitlement to a New Trial**

a. Testimony of Sahr Bockai, Jr. The United States noted that defendant claimed in his Motion for New Trial that with respect to Bockai, "The government withheld evidence of a prior statement that disproved a material falsehood regarding the testimony of Sahr Bockai, Jr." Government Opposition, page 30.

In its argument in Opposition to the Motion for New Trial the government stresses that "The Court permitted the defendant the opportunity to recall Mr. Bockai, Jr. and question him about what was detailed in the DEA 6…." Id.

The United States freely admits its error in not providing the DEA-6 of Bockai prior to his testimony. The United States, in its Opposition to Motion

for New Trial, reiterated the following remedies to rectify Bockai the error:

> The Court suggested several remedies; the government could recall Mr. Bockai, Jr., the defendant could impeach Mr. Bockai Jr. through another witness, *e g.,* a DEA agent… The government suggested that "we can call—ask Mr. Bockai to come back during the government's case-in-chief, or the defense could call him in their case in chief….

Id. 31.

The government continued to argue in its Opposition to Motion for New Trial that defendant was not prejudiced by the late disclosure because "he [defendant] took advantage of the opportunity to impeach Mr. Bockai, Jr. through DEA investigator Lofton. Impeaching Mr. Bockai, Jr., through another witness, such as a DEA investigator, was one of the Court's suggested remedies."

Id. 32.

The government's next argument that "defendant and his counsel made abundant use of Mr. Bockai's purported inconsistencies," Id., completely debunks any argument that defendant did not suffer irreparable prejudice by preventing his trial counsel from using the suppressed evidence of Agent Pryor to develop and prove inconsistencies in the government's case.

3

Ultimately, the government argues with respect to Bockai that "In sum, it is uncontroverted that the DEA-6 was inadvertently disclosed late. *But it was disclosed in time for there to be a remedy."*
Id. 33, emphasis supplied.

The non-disclosure of Agent Pryor's written notes was far more egregious than the late disclosure, during trial, of the DEA-6 related to Mr. Bockai. The government argues that the late disclosure during trial related to Bockai was error; however, it was an error that could be remedied because the jury was still hearing evidence. It is unquestionable that the unjustifiable non-disclosure of Pryor's notes was not a "mistake" but rather was both a *Brady* violation and constitutional error that could not possibly be remedied.

Defendant could not impeach Agent Taylor with Pryor's report as he would have been able to had the disclosure been made in a timely fashion; defendant could not impeach the integrity of the government's investigation based upon Pryor's notes first disclosed after conclusion of the trial; defendant could not present expert testimony that included opinions about the post-trial disclosure; and defendant did not call Pryor as a witness in his case because he was unaware of Pryor's notes until the prejudice had

4

already occurred and there was no way to even attempt to cure the prejudice.

It is completely disingenuous for the government to argue on one hand that the prejudice resulting from the during trial disclosure related to Bockai could be cured by a number of methods, and then to argue that defendant was not highly prejudiced by the late disclosures of Pryor for which there were no means to cure the prejudice.

The fault for the late disclosures of Pryor is solely the responsibility of the government. It cannot be argued that the failure to disclose was the product of inadvertence or a mix up of paperwork. This was a serious violation of defendant's right to due process. The only remedy to cure this profound abuse of defendant's right to due to process and *Brady v. Maryland* is to grant a new trial.

### b. Testimony of the pharmacists:

The United States in its Opposition to Motion for New Trial notes the Court's ruling that the pharmacists' testimony was "clearly relevant for a number of different reasons." Id. 21. The government then adds with respect to the argument about the testimony of the pharmacists, "The defendant has produced no new argument in his motion for new trial, thus

5

the Court's previous rulings should stand." Id.

Since the government filed its Opposition to Motion for New Trial containing the argument in the preceding paragraph, defendant has in fact produced a new argument which is based upon evidence suppressed by the United States. The argument is founded on the evidence contained in Pryor's notes that included a specific pharmacist and a specific pharmacy that defendant reported to law enforcement for suspicious activities. That could have been used to rebut the powerfully incriminating and heavily relied upon testimony of the pharmacists who were called by the government.

The post-trial disclosure related to pharmacist Cooksey was produced when it was devoid of any use to defendant. Accordingly, the only remedy is to grant the Motion for New Trial.

**c. The testimony against defendant was not overwhelming**

This argument should be summarily rejected as it is inconsistent with the trial record and does not take into account the exculpatory evidence produced subsequent to the filing of the Opposition to Motion for New Trial.

As documented in detail in defendant's incorporated by reference Motion for Reconsideration of Motion for Imposition of Conditions of

6

Release Pending Release, PACER Document # 326, the testimony of defendant's patients did establish a proper physician patient relationship, (See defendant's Exhibits 1 and 2 related to Richard Stieg, M.D. in Motion For Reconsideration also attached to this Motion.) The *only* basis upon which the government argued that an appropriate physician/patient relationship was not established was through the government's sole expert witness Dr. Romanoff.

    The testimony of Dr. Romanoff is addressed in detail in the defendant's Motion for Reconsideration of Motion for Institution of Conditions of Release Pending Sentencing. However, essential to this Motion for New Trial is that the record is absolutely clear that Romanoff was not presented with the post-trial disclosures of Pryor related to defendant's reporting of suspicious patients. Dr. Stieg opines that the information contained in the post-trial disclosures should have been considered by an expert in pain management as reporting of patients is a significant component of a physician or nurse practitioner's duties in fulfilling their obligations and responsibilities in the good faith and legitimate practice of medicine.

    It is utterly meritless for the government to argue that the case against

defendant is overwhelming when the only expert called by the government to establish an essential element of the crime charged was presented with incomplete information upon which to base his opinions. Further, defendant's expert could have opined, based upon a complete record, that defendant was engaged in the legitimate practice of medicine.

The Motion for New Trial should be granted so that defendant can present a complete defense based upon a complete record of information.

**d. The government's argument that a Brady violation cannot be established by speculation or conjecture is an irrelevant and meritless argument in this case**.

The production of highly relevant and exculpatory evidence in the form of post-trial disclosures of Agent Pryor is specific information that could have been used in a variety of manners at trial had it been produced.

1. The impeachment of Karen Taylor;

2. Dispute the arguments advanced by the United States related to the testimony of four pharmacists;

3. Enabled defendant to attack the integrity of the government's investigation;

4. Complete a through and complete cross-examination of the government's sole expert witness who was primarily relied upon by the

United States to support a theory of criminality;

    5. Been used by a defense expert to dispute the credibility of the government's expert witness and to provide affirmative evidence upon which a defense expert could have opined about the legitimacy and legality of defendant's actions;

    6. Served as a basis to call Agent Pryor as a defense witness a trial.

The non-disclosures have been specifically identified and their materiality to defendant's defense have been thoroughly addressed in defendant's previously filed Motion for Reconsideration of Motion for Institution of Conditions of Release Pending Sentencing.

It is a long-standing guiding principle of American jurisprudence that "Favorable evidence is material, and constitutional error occurs from its suppression by the government." *Kyles v. Whitley,* 514 U.S. 419, 433 (1986); *United States v. Bagley*, 473 U.S. 667 (1985).

The very specific *Brady* violations identified herein were the bases for similarly requested relief in *United States v. Quinn*, 537 F. Supp. 2d 99 (D.D.C. 2008 Bates, J,) and in *United States v. Stevens*, 08-cr-231 (EGS), 2009 WL 6525926 (2009). (Both Quinn and Stevens are discussed in detail in defendant's previously filed and incorporated herein Motion for

9

Reconsideration of Motion for Institution of Conditions of Release Pending Sentencing).

There is nothing speculative about the alleged *Brady* violations. Material and exculpatory evidence was suppressed until the conclusion of the trial. Defendant had absolutely no means to present the exculpatory evidence. The withholding of the material evidence profoundly prejudiced defendant's ability to present a full and complete defense. As such, the granting of a new trial is the only means by which to cure the prejudice.

## SUPPLEMENT TO MOTION FOR NEW TRIAL

### DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL

**a. The legal standard**

*Strickland v. Washington* requires a party claiming ineffective assistance of counsel to show (1) that "counsel's representation fell below an objective standard of reasonableness…[measured] under prevailing norms," (known as the performance prong) and (2) that the "deficiencies in counsel's performance…[were] prejudicial to the defense." 466 U.S. 668, 687-88 (1984). The moving party must show "specific errors by trial counsel." *United States v. Cronic*, 466 U.S. 648, 666 (1984).

10

**b. The specific and prejudicial error of trial counsel in failing to call the highly qualified expert witness whom it had retained to testify at trial**

"Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert testimony." *Harrington v. United States*, 131 S. Ct. 770, 778 (2011). In *United States v. Smith,* 90 F.3d 591(D.C. Cir. 1996 (Unpublished opinion), the Circuit held "appellant's argument that counsel rendered ineffective assistance of counsel by failing to retain a drug expert cannot succeed *because he provides no evidence to suggest that another chemist would have found something other than cocaine case."* Emphasis supplied.

Turning to the facts of this case it is clear that defendant's trial counsel believed it was necessary to retain an expert in the field of pain management. On October 11, 2016 the government filed Notice of its intention to call Dr. Mark Romanoff as an expert witness. PACER Document 25.  Defendant noticed Timothy Simopolous, M.D. as an expert in the fields of pain management and anesthesiology and produced an Affidavit from him.

The testimony of Dr. Romanoff was vigorously litigated during a

pretrial *Daubert* challenge and contested through cross-examination during trial. Dr. Romanoff's testimony and the bases for his opinions are the subject of allegations raised by prior defense counsel in the Motion for New Trial. It is demonstrated through pretrial proceedings, trial proceedings and post-trial filings, that defendant's trial team was fully aware of the significance of the testimony of Dr. Romanoff. Indeed, during the closing arguments of both parties, the testimony of Dr. Romanoff was the subject of significant discussion.

    Defendant references the Curriculum Vitae and Affidavit of Michael Stieg, M.D. (Exhibits 1 and 2 of defendant's Motion for Reconsideration of Motion for Institution of Conditions of Release Pending Sentencing attached hereto and incorporated within). Dr. Stieg, a neurologist who founded the Boulder Memorial Hospital Pain Clinic and is a member of the American Board of Pain Medicine and American Board of Addiction Medicine, has drafted an Affidavit that is attached to both defendant's Motion for Reconsideration of Request for Institution of Conditions of Release Pending Sentencing as well as this pleading, The Affidavit offers a number of opinions that Dr. Stieg has reached based upon a complete review of the record. Those opinions include, but are not limited to:

12

1. The dosages prescribed by defendant were proper;

2. It was an inappropriate for Dr. Romanoff to rely on unsigned medical records for his opinions;

3. Dr. Robinson was justified in writing the prescriptions that he wrote;

4. Different medical clinics in different environments will treat patients in different manners. This does mean that one method of treatment is proper and another is improper;

5. Dr. Stieg acknowledged Dr. Simopolous' statement in Simopoulos' Affidavit that "I was unable to conclude that Mr. Robinson's prescription of oxycodone to these patients were not appropriate considering standard medical practice;

6. Dr. Romanoff disregarded crucial testimony of defendant's patients in the formulation of his opinion.

The following facts cannot be reasonably disputed:

1. Dr. Romanoff was the only expert called in the case:

2. Dr. Romanoff's testimony was essential in order for the government to obtain a conviction;

3. Defendant's trial counsel retained an expert in pain management and provided pretrial notice they may call the expert witness:

4. Defendant's trial expert witness had provided a pretrial opinion that defendant's prescriptions of oxycodone were not inappropriate;

5. Neither Dr. Simopolous nor any other medical expert was called on behalf of defendant at trial.

Challenging the testimony of Dr. Romanoff was not a minor or insignificant aspect of defendant's defense. It was a crucial challenge to an essential element of the charged offense for which every effort needed to be made. The challenge needed to include the presentation from a well qualified expert to present contrary opinions and to provide the jury with opinions based upon a complete and thorough review of materials that experts typically rely upon in the fomulation of opinions.

Defendant has demonstrated that a qualified expert, Richard Stieg, M.D., does exist who could have provided the necessary opinions to refute those of Dr. Romanoff. However, aside from Dr. Stieg, defendant's trial team had retained and noticed a highly qualified expert who in his Affidavit provide a contrary opinion from that of Dr. Romanoff.

Why defendant's trial counsel chose not to call the pain management expert they retained remains a significant mystery. However, what is not a mystery is whether the decision to call the expert was a

14

reasonably or objectively sound decision. See *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 1315) ( The reasonableness of a counsel's performance is an objective inquiry).

*Wiggins v. Smith,* 123 S.Ct. 510 (2003) involved a challenge to a death sentence based upon trial counsel's opening statement that the jury would hear evidence about defendant's difficult life. However, such evidence was not presented. Following the jury's verdict, new counsel entered an appearance and argued that trial counsel was ineffective for failing to present evidence of defendant's dysfunctional background. Testimony from a forensic social worker was offered that showed the severe abuse defendant had suffered at the hands of his mother.

The *Wiggins* Court held: The performance of Wiggins' attorney at sentencing violated his Sixth Amendment right to effective assistance of counsel. The Court further found that the ineffective assistance prejudiced defendant's defense. "To establish prejudice, a defendant must show that there is a real probability that, but for counsel's unprofessional errors, the proceedings results would have been different." 539 U.S. at 2531. The Court added, "the available mitigating evidence, taken as a whole, might well have influenced the jury's appraisal of his…culpability." Id.

Robinson, similarly to Wiggins, was not limited by financial constraints in retaining and introducing an expert witness. Robinson's trial team included attorneys from Covington and Burlington who in fact had the necessary resources to retain an expert in pain management. Had a well qualified expert been offered as a defense witness at trial, there existed available testimony to both refute the opinions of Dr. Romanoff and to affirmatively establish that defendant maintained his practice in a legitimate manner.

## CONCLUSION

Defendant's Motion for Reconsideration of Motion for Institution of Conditions of Release Pending Sentence, incorporated by reference herein, details the egregious *Brady* violations committed by the United States and the immense prejudice he sustained as having been denied access to critical and exculpatory evidence. The suppression of the material evidence constituted a denial of rights guaranteed to defendant by the United States Constitution. There is no reasonable justification for this violation of defendant's right to a fair trial that includes the presentation of a complete defense.

Defendant was further prejudiced by the unexplained and unsound

16

decision not to present expert testimony to rebut the expert testimony of Dr. Romanoff. The expert testimony that would certainly have aided the jury in reaching a fair and fully informed decision was available to trial counsel and the failure to introduce the evidence deprived defendant of a fair trial.

WHEREFORE, for the reasons stated herein, and for each reason detailed in the incorporated Motion for Reconsideration of Defendant's Motion for Institution of Conditions of Release Pending Sentencing, defendant respectfully prays this Honorable Court grant his Motion for New Trial.

Respectfully submitted,

_____/s/_____
Steven R. Kiersh#323329
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served, via ECF, upon all counsel of record on this the 31st day of December, 2018.

_____/s/_____
Steven R. Kiersh

17