**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

IVAN L. ROBINSON,

     Defendant

Criminal Action No. 16-98 (CKK)

**MEMORANDUM OPINION AND ORDER**
(May 6, 2020)

On August 10, 2017, Defendant Ivan L. Robinson ("Defendant" or "Mr. Robinson") was convicted of forty-two counts of Distribution of a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), with each count punishable by up to 20 years imprisonment. Mr. Robinson was also convicted of two counts of money laundering. The Court considered the Government's motion that Defendant be remanded to the custody of the United States Marshal pending sentencing as well as Defendant's arguments for release, and thereafter ordered that Mr. Robinson be detained pursuant to 18 U.S.C. § 3143(a)(2). That provision mandates detention for "a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence[.]"[1] 18 U.S.C. Section 3143(a)(2). There is an exception to this mandatory detention, which requires that the Court find a substantial likelihood that a motion for acquittal or a new trial will be granted, or a Government attorney recommends no sentence of imprisonment <u>and</u> the Court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to any other person in the community. 18 U.S.C. § 3143 (a)(2)(A) (emphasis added).

---

[1] The offenses of Distribution of a Controlled Substance, pursuant to 21 U.S.C. §§ 841(a)(1) and (a)(2)(C), are qualifying offenses.

This exception was considered by the Court on August 10, 2017, and it was deemed to be inapplicable.

Thereafter, on April 3, 2018, subsequent to his filing of a [284] Motion for a New Trial, Defendant filed his [311] Motion for Institution of Conditions of Release Pending Sentencing, which was denied by this Court in its [316] May 3, 2018 Order. The Court concluded that because it did not find that Defendant was substantially likely to succeed on his Motion for a New Trial, *see* ECF No. 316, at 1, the assertions related to Defendant's educational level, his ties to the community, support by family members, and prior compliance with conditions of release only become relevant "if the Court were to determine that Defendant was likely to succeed on his motion." May 3, 2018 Order, ECF No. 316, at 6.

Pending before this Court is Defendant's [365] Motion to Permit Defendant to be Released and Placed on House Arrest with Third-Party Monitoring Pending Resolution of his Motion for New Trial ("Def.'s Mot. For Release").[2] Defendant indicates that he is currently incarcerated at

---

[2] Defendant's [284] Motion for a New Trial (as supplemented) is being considered separately by this Court. In connection with this Memorandum Opinion and Order, the Court considered the following submissions by the parties: (1) Defendant's Motion to Permit Defendant to be Released and Placed on House Arrest with Third-Party Monitoring Pending Resolution of his Motion for New Trial ("Def.'s Mot. for Release"), ECF No. 365; (2) Defendant's Supplement to Motion for Release ("Def.'s First Suppl."), ECF No. 366; (3) the Government's Response in Opposition to Defendant's Motion for Release Pending Resolution of Motion for a New Trial ("Govt. Opp'n."), ECF No. 367; (4) Defendant's medical records from Central Virginia Regional Jail and from Dr. Saleh at OrthoVirginia in Lynchburg, Virginia, which were produced to this Court and Government counsel, but not docketed; (5) Defendant's Reply to the Government's Response ("Def.'s Reply"), ECF Nos. 371 [this was also docketed as ECF 373]; (6) Supplement to Defendant's Reply ("Def.'s Suppl. Reply"), ECF No. 372; (7) Second Supplement to Motion for Release ("Def.'s Second Suppl."), ECF No. 374; (8) Government's Supplemental Response in Opposition to Defendant's Motion for Release ("Govt. Suppl. Opp'n."), ECF No. 375; (9) Defendant's Third Supplement to Motion for Release ("Def.'s Third Suppl."), ECF No. 376; (10) Defendant's Fourth Supplement to Motion for Release ("Def.'s Fourth Suppl."), ECF No. 378; (11) Government Response to Defendant's Fourth Supplement ("Govt. Resp. to Def.'s Fourth

the Central Virginia Regional Jail in Orange, Virginia, and "because of a medical condition, he is locked down 23 hours a day." Def.'s Mot. For Release, ECF No. 365, at 2. Defendant notes that, with regard to the COVID-19 pandemic, which is "impacting every citizen, . . . jails are of particular concern because those who are confined cannot readily socially distance themselves as can people who are not incarcerated." *Id.* at 3. The Court has been notified that, as of the date of this Memorandum Opinion and Order, there are no confirmed cases of COVID-19 at the Central Virginia Regional Jail. Defendant asserts that he is not a flight risk, and he requests that this Court grant his release to live with his mother. *Id.* In his [366] Supplement to his Motion for Release ("Def's First Suppl."), he indicates further that he is not a danger to the community "as he can no longer provide medical services." Def.'s First Suppl., ECF No. 366, at 4.

The Government opposes Defendant's request for release, on grounds that:

> The defendant's motion for Release and his Supplement appear to be based solely on the current COVID-19 pandemic and a request for the Court to ignore the statute and release him. Unlike the pretrial bail statute, which permits temporary release for a "compelling reason" (*See* 19 U.S.C. § 3142(i)), there is no such provision applicable to the defendant. Even if there were some mechanism by which the defendant could seek release due to COVID-19, he has not shown that he is at higher risk to be severely affected by it.

Government's Response in Opposition to Defendant's Motion for Release Pending Resolution of Motion for New Trial ("Govt. Opp'n), ECF No. 367, at 4. The Government acknowledges the gravity of the global pandemic and asserts that it is "committed to ensuring the safety and health of inmates like the defendant." *Id.* at 7.

---

Suppl."), ECF No. 379; Defendant's Fifth Supplement to Motion for Release ("Def.'s Fifth Suppl."), ECF No. 380; Defendant's Sixth Supplement to Motion for Release ("Def.'s Sixth Suppl."), ECF No. 381; Defendant's Seventh Supplement to Motion for Release ("Def.'s Seventh Suppl."), ECF No. 382, and the record in this case.

In requesting his release, Defendant does not assert the legal standard upon which he relies but instead, he "relies upon the discretionary powers of this Honorable Court in seeking the relief requested[.]"  Def.'s Mot. for Release, ECF No. 364, at 3.  In its [375] Supplemental Response in Opposition to Defendant's Motion for Release Pending Sentencing ("Gov't. Suppl. Opp'n."), the Government notes that "18 U.S.C. § 3145(c) provides that a person may be released, under specific circumstances, if it is "clearly shown that there are exceptional reasons why such person's detention would not be appropriate[,]" but that "courts are divided on whether [this statutory section] also applies as a safety valve in this circumstance or is only applicable to the courts of appeal on appeal, and the D.C. Circuit has not opined on this issue."  Gov't.  Suppl. Opp'n., ECF No. 375, at 7.  *But see United States v. Boyd,* No. 19-cr-292, (JDB) (March 27, 2020) (finding the Court could utilize subsection (c)); *United States v. Harris*, No. 19-cr-356 (RDM), ECF No. 35, at 10 (D.D.C. March 27, 2020) (applying Section 3345(c)); *United States v. Wiggins*, No. 19-cr-258 (KBJ), ECF No. 100 (analyzing defendant's claim pursuant to Section 3145(c)) (D.D.C. April 10, 2020); *United States v. Jones*, No. 19-cr-232 (EGS) , ECF No. 41, at 11 (D.D.C. April 23, 2020) (finding Section 3145(c) applicable.)   In *Wiggins, supra.*, the Honorable Ketanji Brown Jackson opined on the applicability of Section 3145(c), as follows:

> [T]he plain text of section 3145(c) establishes that a district judge who has jurisdiction over a defendant's criminal case qualifies as the "judicial officer" who may order the defendant released.  *See* 18 U.S.C. § 3156(a)(1) (defining the term "judicial officer" for the purpose of 18 U.S.C. §§ 3141-3150 to mean "any person or court authorized .. . to detain or release a person before trial or sentencing or pending appeal in a court of the United States").  The weight of authority specifically holds as much, and this is so notwithstanding the fact that the first part of section 3145(c) is plainly directed to the court of appeals.  *See United States v. Meister*, 744 F.3d 1236, 1237-38 (11th Cir. 2013) (noting that each of the other eight circuits that has considered whether or not district courts have the authority to apply § 3145 have found that they do)[.]

4

*United States v.* Wiggins, No. 19-cr-258 (KBJ), ECF No. 100, at 10-11 (with the remaining part of the string cite omitted).

If the Court proceeds pursuant to 18 U.S.C. § 3145(c), there is a statutory prerequisite that the defendant show by clear and convincing evidence that he is not a flight risk or a danger to any other person or the community. While Defendant does not specifically address the standard pursuant to Section 3145(c), the Court notes that Defendant makes several arguments in his Motion for Release that appear to be intended to demonstrate that he is not a threat to the community and that he is unlikely to flee if released, and the Government does not focus on rebutting these arguments. Defendant argues that: (1) he is a lifelong resident of the Washington, D.C. area, and has never before been convicted of a criminal offense; (2) the crimes for which he was convicted are non-violent; (3) Defendant is a veteran of the armed services; (4) he was gainfully employed as a license nurse practitioner; (5) he has a confirmed address in Maryland, *see* Def.'s Mot. for Release, ECF No. 365, at 1-3; (6) he is "without the means to commit the types of crimes for which he currently stands convicted[,]" *see* Def.'s Reply, ECF No. 371, at 9; (7) he has not received any disciplinary sanctions while incarcerated; and (8) his medical license has been revoked so he has no access to controlled substances. Def.'s Suppl. Reply, ECF No. 372, at 1-2. Assuming *arguendo* that Defendant demonstrates by clear and convincing evidence that he is not a flight risk or a danger to any other person or the community," Defendant must still make a "clear [] show[ing] that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). The submissions by the Defendant and the Government both focus on this "exceptional reasons" portion of the standard set forth in Section 3145(c).

5

As a preliminary matter, this Court notes that courts have laid out their own standards for "exceptional reasons" as that term is not defined in the statute. *See Wiggins*, 19-cr-258 (KBJ), ECF No. 100, at 12-13 (discussing the interpretation of "exceptional reasons"). A "court should examine the totality of the circumstances and, on the basis of that examination, determine whether due to any truly unusual factors or combination of factors . . . it would be unreasonable to incarcerate the defendant" pending sentencing. *United States v. Garcia*, 340 F.3d 1013, 1018 (9th Cir. 2003); *see also United States v. LaRue*, 478 F.3d 924, 925 (8th Cir. 2007) (defining "exceptional" in the context of Section 3145(c) as "clearly out of the ordinary, uncommon, or rare.") In the instant case, Defendant asserts that he has three medical issues/concerns that presumably form the basis for "exceptional reasons" for his release in light of the COVID-19 pandemic: (1) he is wheelchair bound and cannot do any meaningful exercise; (2) he is prescribed Lyrica, which may lead to a side effect of respiratory depression, and he is immunocompromised with rheumatoid arthritis; and (3) he is prescribed Azithromycin, which is used to treat various infections, including respiratory infections. Def.'s Reply, ECF No. 371, at 2-4; *see also* Def,'s Second Suppl., ECF No. 374, at 2-3 (noting that Defendant has been encouraged to restart physical therapy, which he has not done while in custody, and noting documentation of "severe osteoarthritis which defendant has previously [alleged] to be an affliction that compromises his immune system.") As discussed herein, the Government proffers argument countering these allegations by Defendant. Accordingly, because the reasons proffered by Mr. Robinson in support of his release do not at this time warrant "exceptional reasons," Defendant's [365] Motion for Release shall be DENIED WITHOUT PREJUDICE.[3]

---

[3] In an exercise of its discretion, the Court finds that holding oral argument in this action would not

Defendant's three medical issues are discussed in further detail below.

Defendant's Use of a Wheelchair

As previously noted, Defendant contends that his use of a wheelchair puts him at higher risk of infection because he cannot do any meaningful exercise. The Government asserts however that, as Defendant recognizes, "COVID-19 is a respiratory infection: and Plaintiff's "medical records all indicate that his respiratory system is healthy." Gov't. Suppl. Opp'n., ECF No. 375, at 4.[4] For example, in mid-February 2020, Defendant's oxygen saturation level was 99 [with 95-100 normal]; he had two negative chest x-rays [in June 2018 and February 2020], and, in mid-February 2020, a medical provider noted that Defendant's respiratory system has "no rales [clicking, bubbling or rattling sounds] rhonchi [sounds like air being blocked] or wheeze [high-pitched sounds produced by narrowed airways]." Gov't. Suppl. Opp'n., ECF No. 375, at 4-5. Furthermore, in early March 2020, another medical provider noted that Defendant's lungs sounded normal and his respiratory system was "Clear to Auscultation Bilaterally." *Id.* at 5. Accordingly, there is no medical evidence that links Defendant's use of a wheelchair (and asserted lack of exercise) to any resulting respiratory problems and heightened risk of contracting COVID-19.

Defendant's Prescription for Lyrica

The Government disputes Defendant's assertion that one of the side effects of Lyrica, as addressed on the Pfizer website or the Lyrica website, is "respiratory depression," and the

---

be of assistance in rendering a decision. *See* LCrR 47(f).

[4] The Court does not cite directly to the Defendant's medical records as they are not part of the public record in this case; instead, the Court cites to the parties' summaries of medical records (which provide citations to the records themselves).

Government reiterates its conclusion from review of Defendant's medical records that the Defendant's respiratory system is healthy. Gov't. Suppl. Opp'n., ECF No. 375, at 2-3 (referencing a link to information on Lyrica). The Government notes that Defendant's medical records state that he suffers from "low back pain" and he has "back pain as a result of an injury" and further, that "osteoarthritis was observed on a CT scan." *Id.* at 3. The Defendant visited Dr. Islam Saleh on three occasions — October 16, 2019, January 27, 2020, and February 19, 2020 — and the medical records indicate that the primary diagnosis was osteoarthritis (not rheumatoid arthritis) in the Defendant's hip as well as lower back pain. On October 16, 2019, Defendant's pulmonary examination revealed "normal, non-labored breathing." *Id.* at 5. During the January visit, Dr. Saleh provided Defendant with an intra-articular injection at his left hip. *Id.* Accordingly, Defendant's medical records do not support his claim that he has rheumatoid arthritis (and is thus immunocompromised) or that the Lyrica was prescribed for this reason.[5]

Defendant's Prescription for Azithromycin

Defendant's medical records indicate that he was prescribed Azithromycin (a "Z-pack") on February 14, 2020, but there was no indication as to why it was prescribed. While Defendant notes that it can be used to treat respiratory infections, the Government notes that it can also be used to treat strep throat, pinkeye, and ear infections. Govt. Suppl. Opp'n., ECF No. 375, at 3 (referencing a link regarding azithromycin). The Government notes that the same medical chart showing the prescribed Z-pack also indicates that Mr. Robinson's lungs are healthy and normal. *Id.* at 3. In his Third Supplement, Defendant argues (without providing any evidence) that, by

---

[5] In his conclusion to the Second Supplement, Defendant asserts generally — without any references to legal authority or mention of a legal standard — that denial of medical services to an individual who is immunocompromised amounts to an Eighth Amendment issue. Def.'s Second Suppl., ECF No. 374, at 5.

process of elimination, "the only purpose this medication can be prescribed for relevant to and consistent with defendant's medical history is for respiratory distress."  Def.'s Third Suppl., ECF No. 376, at 6. The Court finds this reasoning unpersuasive.

Upon review of the medical records in this case, this Court finds that none of the medical "conditions" raised by Mr. Robinson constitute "exceptional reasons" warranting his release.   It is unclear for what reason Azithromycin was prescribed to Mr. Robinson, but it does not appear to have anything to do with a respiratory illness.   Furthermore, while Lyrica does have potential side effects, "respiratory depression" does not appear to be one of them, and consideration of possible potential side effects from a drug, which may never come to fruition, is a far stretch from an actual diagnosis of a medical condition.  Moreover, while there is evidence in Defendant's medical records that he suffers from hip pain and osteoarthritis, this does not demonstrate that Defendant is immunocompromised with rheumatoid arthritis.   Nor does the fact that he is in a wheelchair and cannot easily exercise convince this Court that he is at higher risk for contracting COVID-19. While there may be cases where a defendant's underlying medical conditions make him especially vulnerable to the virus,[6] and he could become eligible for release under the "exceptional reasons"

---

[6] *See United States v. Watkins,* No. 20-cr-19 (CRC) (Minute Order) (D.D.C. Mar. 31, 2020) (denying release in a gun case on grounds that a "generalized risk to otherwise healthy detainees" is not enough); *United States v. Lin,* No. 19-cr-387 (TJK), ECF No. 34, at 4 (D.D.C. Apr. 1, 2020) (denying release in an aggravated identity theft conspiracy case and noting that a heightened risk of infection is one factor that must be balanced against others); *United States v. Marchi*, No. 19-cr-406 (DLF) (Minute Order) (D.D.C. Apr. 2, 2020) (denying release in a case involving unlawful possession of a firearm where the defendant suffers from asthma, based on the consideration of the defendant's prior criminal history, participation in criminal activity while on supervision, and history of violence and weapons); *United States v. Whitaker*, No. 19-cr-351 (DLF) (Minute Order) (D.D.C. April 2, 2020) (denying release pending sentencing in a firearms case even though defendant claims bronchitis, allergies, and asthma); *United States v. Mathis*, No. 19-cr-330 (CJN), ECF No. 31, at 6 (D.D.C. April 2, 2020) (denying release post-plea in a case involving defendant sending obscene materials to a minor, despite defendant's

language of Section 3145(c), the Court finds that Mr. Robinson's general alleged risk of harm to detainees does not warrant Defendant's release.  The Court will now briefly address each of the Defendant's remaining <u>numerous</u> supplements that were filed in support of his Motion for Release.

<u>Defendant's Third Supplement</u>

In connection with Defendant's Third Supplement, he provides an affidavit from a doctor which "generally addresses conditions in jail and how COVID-19 subjects inmates to particularized susceptibility to the virus." Def.'s Third Suppl., ECF No. 376, at 2.  Defendant further suggests that this Court should appoint an amicus to inspect conditions at the Central Virginia Regional Jail (as it has done in connection with *Banks v. Booth*, 20-cv-849 (CKK), a case pending before the undersigned relating to conditions at the D.C. Jail in light of the COVID-19 pandemic).[7]  Defendant points to his race as factor putting him at high risk for contracting COVID-19, and finally, Defendant cites to four decisions by various judges in this Court regarding detainee release cases, where the defendants were released.  Those cases are all distinguishable.

---

possible hypertension); *United States v. Bailey*, No. 19-cr-391 (JDB), ECF No. 49, at 2 (D.D.C. Apr.2, 2020) (denying release in a case involving child pornography despite defendant's claims of "complicated medical conditions"); *United States v. Brooks*, 19-cr-67 (RCL) (Minute Order) (D.D.C. April 4, 2020) (denying motion for requested release, noting that the severity of Defendant's claimed asthma was unclear from the record). *But see United States v. McLean,* No. 19-cr-380 (RDM), ECF No. 21, at 5 (D.D.C. Mar. 28, 2020) (in a guns and drugs case, finding it a "close case," but granting release due to COVID-19, in part because defendant's diabetes put him at "high risk if infected" and provided "a compelling reason for [defendant] to stay at home in any event"); *United States v. Kofi Appiah and James Hutchings Jr.*, No. 19-cr-361 (BAH), ECF Nos. 40 & 41) (D.D.C. Mar. 26, 2020) (releasing defendants in a firearms conspiracy case because of underlying health conditions including severe assault at jail [Hutchings] and verified asthma [Appiah]).

[7] Defendant later points out, in his Fifth Supplement, that "upon information and belief, [this Court does not] have jurisdiction to order an independent review of the conditions of the Central Regional Virginia Jail." Def's Fifth Suppl., ECF No. 380, at 4.

In *United States v. McLean*, No. 19-cr-380 (RDM), ECF No. 21, at 5 (D.D.C. Mar. 28, 2020), the defendant had diabetes put him at "high risk if infected" and provided a "compelling reasons for [defendant] to stay home in any event." Similarly, in *United States v. Kofi Appiah and James Hutchings, Jr.*, No. 19-cr-361-2 (BAH), ECF Nos. 40 & 41 (Mar. 26, 2020), defendant Appiah suffered from verified asthma, and defendant Hutchins had been severely assaulted at the jail. In *United States v. Jaffee*, No. 19-cr-88 (RDM) (Minute Order) (D.D.C. Mar. 26, 2020), the defendant sought pretrial release, which involved revisiting the statutory factors under 18 U.S.C. § 3142(g) pertaining to whether he was a risk of flight and danger to the community.[8]

Even in *United States v. Harris*, No. 19-cr-356 (RDM), ECF No. 36 (D.D.C. Mar. 27, 2020), where release was granted based upon application of the standard pursuant to Section 3145(c), the Honorable Randolph D. Moss indicated that "[e]ach case must be evaluated on its [own] terms, and each case requires consideration of all of the relevant circumstances." *Id.*, ECF No. 36, at 12; *see also United States v. Wiggins*, No. 19-cr-258 (KBJ), ECF No. 100, at 20 (D.D.C. April 10, 2020) ("[A]t present, it falls to the court to determine, on an ad hoc, case-by-case basis, whether each detained defendant who files a motion for release on the basis of COVID-19 can be let out of jail consistent with the dictates of law.").[9]

---

[8] Defendant also cites *United States v. (James) Johnson*, 19-cr-52 (TSC), ECF No 48 (D.D.C. April 8, 2020) to illustrate that the COVID-19 pandemic is a national emergency, a point that has been acknowledged by the Government and this Court. Def.'s Third Suppl., ECF No. 376, at 8.

[9] *See, e.g., United States v. Jordan*, No. 20-cr-55 (TFH) (Minute Order) (D.D.C. Mar. 23, 2020) (denying pretrial release in a guns and drugs case where defendant had no prior convictions); *United States v. Parker*, No. 19-cr-349 (APM), ECF No. 30 (D.D.C. Mar. 30, 2020) (denying release after a Section 924(c) plea despite allegations of Eighth Amendment violations); *United States v. Gaskins*, No. 20-cr-23 (RDM) (Minute Order) (D.D.C. Apr. 2, 2020) (denying release in a case involving a charge of unlawful transport of firearms where defendant was on supervision at the time of his arrest for the charged offense and he had a considerable criminal history including repeated unlawful possession of guns); *United States v. Green*, No. 19-cr-250 (DLF)

Defendant's Fourth Supplement

Defendant asserted that there "has been one confirmed death related to the virus in Virginia Jails." Def.'s Fourth Suppl., ECF No. 378, at 1. The Government responded to the Fourth Supplement by indicating that "[o]n April 17, 2020, [counsel] contacted the Central Virginia Regional Jail, where the defendant is house, and was advised that no inmates at the facility have tested positive for COVID-19." Govt. Resp. to Def.'s Fourth Suppl., ECF No. 379, at 1. As previously mentioned, the Court has confirmed that, as of the date of this Memorandum Opinion and Order, there are no confirmed cases of COVID-19 at the Central Virginia Regional Jail.

Defendant's Fifth Supplement

In this Fifth Supplement, Defendant "addresses the 31 page Memorandum Opinion issued by this Court in *Banks v. Booth* . . . " and he alleges generally that representations from officials at the Central Virginia Regional Jail "that the Orange facility is handling the situation, as well as it can" do not satisfy Defendant's equal protection concerns because, unlike in *Banks*, there is no amici taking note of the conditions at the facility where Defendant is housed. Def.'s Fifth Suppl., ECF No. 380, at 3-5 (quoting from Govt. Opp'n, ECF No. 367, at 5). Defendant's quote from the

---

(Minute Order (D.D.C. Apr. 6, 2020) (denying release in a gun case where defendant failed to meet the Section 3143(a)(1) factors and his health risks did not outweigh this); *United States v. Wiggins*, No. 19-cr-258 (KBJ), ECF No. 100, at 20 (D.D.C. April 10, 2020) (denying motion for release in a drug trafficking case where defendant entered a plea of guilty to high-level participation in a heroin conspiracy, he had no underlying health conditions, and no conditions of release could assure the safety of the community). *But see United States v. Harris,* No. 19-cr-356 (RDM), ECF No. 36 (D.D.C. Mar. 27, 2020) (granting release in a child pornography case based on the COVID-19 pandemic, the release of defendant to his father's residence with the imposition of strict conditions including electronics being secured, no internet access and ongoing declarations by defendant's father to attest to defendant's compliance); *United States v. Jaffee,* No. 19-cr-88 (RDM) (Minute Order) (D.D.C. Mar. 26, 2020) (granting release because of COVID-19, but noting defendant's prior perfect compliance with the conditions of his release as well as questions about the strength of evidence in the case).

Government's Opposition – as taken out of context - leaves out significant information, namely, the representations that:

> Specifically, the Orange facility has done the following to ensure the safety of its incarcerated population: (1) banned all non-attorney visits to limit unnecessary exposure; (2) implemented screening processes for all persons entering the facility, including new inmates, attorneys and staff; such screening includes assessing individuals for symptoms, sanitizing stations, etc.; (3) if incoming individuals fail the screening process, they are not permitted to enter the facility; (4) a disinfection/sanitization protocol is employed twice a day to ensure the cleanliness and health of the facility, the inmates, and the employees; (5) the facility has the capability to isolate/quarantine inmates, however, it has not been necessary as of yet; and (6) if an inmate appears symptomatic, *e.g.* has a fever, the facility's protocol is that the inmate will be removed from the facility and transported to a local hospital.

Govt. Opp'n, ECF No. 367, at 5.  Accordingly, Defendant's allegation that an amici is necessary to allay his constitutional concerns is unsupported by the record in this case.

### Defendant's Sixth Supplement

Defendant attaches an article from U.S. News and World Report that addresses the relationship between COVID-19 and blood clots.  Defendant does <u>not</u> indicate that he has any blood clotting medical issue; rather, he theorizes that because he is in a wheelchair, he is "more susceptible to blood clotting and worse consequences of the COVID-19 virus."  Def.'s Sixth Suppl., ECF No. 381, at 1.  The Court finds this too speculative to constitute "exceptional reasons" to warrant Defendant's release.

### Defendant's Seventh Supplement

Defendant cites to *United States v. (Morris) Johnson*, 15-cr-125 (KBJ), ECF No. 219 (D.D.C. April 29, 2020), and he attempts to analogize his circumstances to this case, by pointing out that he is a first time non-violent offender with a verified address with his parents just outside of the District of Columbia, where he has been a lifelong resident.  Def.'s Seventh Suppl., ECF

13

No. 382, at 3-4. Defendant indicates further that he never violated any condition of his pre-trial release. Mr. Robinson was in the military and he has "informed undersigned counsel that he suffers from PTSD," *id.*, although no medical evidence has been produced to support PTSD. The Court finds the two cases distinguishable. In *Morris Johnson*, the defendant was granted compassionate release pursuant to 18 U.S.C. § 3582(c)(1), where his documented medical issues included high blood pressure, obesity and sleep apnea, and he also had mental health issues, including Posttraumatic Stress Disorder ("PTSD").

Accordingly, upon consideration of Mr. Robinson's [365] Motion to Permit Defendant to be Released and Placed on House Arrest with Third-Party Monitoring Pending Resolution of his Motion for New Trial, including all the supplements thereto, it is this 6th day of May 2020,

ORDERED that Defendant's [365] Motion for Release is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED.**

/s/
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE